IN THE U.S. EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION (Miami Tower)

FILED BY_____D.C.

MAR - 1 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Melvin Abdullah El-Amin #Mu 1245
SCI-Rockview
Box A- 1 Rockview Place
Bellefonte, PA 16823
        Petitioner

V
_____

Port Authority Administrator
Port Everglades
1901 Eller Drive
Fort Lauderdale, Fl 33316

Broward county Sheriff Station 6- Supervisor
Port Everglades
1901 Eller Drive
Fort Lauderdale, Fl 33316

Director, Department Of law Enforcement
P.O. Box 1489
Tallahassee, Fl 32302

Secretary Of Department Of Homeland Security
1300 Pennsylvania Ave. NW
Washingtom, DC 20229

Director, Transportation Security Administration
TWIC-Card Office
601 12th Street S
Arlington, VA 20598
        Respondents

Case No. _____

## COMPLAINT

Comes now, Petitioner Melvin Abdullah El-Amin, Pro se., and files this complaint seeking

redress/reparations from the respondents for violations of his Civil rights and his Equal Employment

Opportunity and states as follow:

1.

## PARTIES

**Petitioner,** Melvin Abdullah El-Amin (hereinafter "El-Amin") is an American born and raised Muslim Citizen who has never had any ties, interest nor affliations with any radical foreign or domestic Islamic organization(s) or radicalized individual Muslims who may desired to do harm to the Homeland.  In 2008, El-Amin submitted an application and application fee of $132.50 for a criminal and terrorist related background check iniated *iniTiated* by the Department of Homeland security ("DHS"). After being vetted by the FBI and found to be eligible to become a Transportation Workers Identification Credential ("TWIC-Card") holder, El-Amin became qualified via becoming a TWIC-Card Holder to enter any seaport in America where members of his Union-The International Longshoremen's Association ("ILA") worked.

**Respondent,** Broward County Sheriff Station 6-Supervisor at Port Everglades in Fort Lauderdale, Florida who oversees the Sheriff Deputies during the day to day operations as it relates to accepting application and the $50.00 application fee charged to process applications for Port ID Badges. Port ID badges are required for individualsto enter the port for employment purposes in an effort to earn their livilihood. The respondent far exceeded his legal authority and overstepped his boundary by participating in an effort that denied El-Amin a Port ID Badge after the Department of Homeland security took over control and security of all seaports and borders nationwide and had issued El-Amin a TWIC-Card.

**Respondent,** Port Authority Administrator, at Port Everglades engaged in the day to day operation in helping Broward County Deputy Sheriff Department to determine the approval or rejection of individuals who apply for employment opportunity and ID Badges in order to enter the port for gainful employment. The respondent violated El-Amin right to obtain an ID Badge inspite of the fact El-Amin was qualified to receive an ID Badge by virtue of him possession a TWIC-Card issued bythe

2.

Department of Homeland security coupled with the written referal on ILA stationary acknowledging his membership with the ILA Local Union #1529. The respondent's unlawful behavior contributed to El-Amin being denied an opportunity to earn his livilihood as an ILA member @ $28.00 per hour at Port Everglades when he disregarded DHS's official take over of all seaport security in America which was well established in 2009 when El-Amin applied for an ID Badge at Port Everyglades.

**Respondent,** Director of the Florida Department Of Law Enforcement is responsible for overseeing and supervising legitimately promulgated state and federal laws in the State of Florida. He had a duty and obligation including recognizing, DHS's Take over of the nations' seaport security and submitting to that federal law which is the supreme law of the land in America relative to seaport security. The respondent failed to obey federal law which entailed in this instant case to relinguish control over seaport security at Florida's ports when the DHS was assigned by the U.S. Congress to assume that security. As a direct and proximate result, El-Amin's TWIC rights and privileges were rendered null and void, having no legal effect or force in Florida causing El-Amin to los his right to participate in gainful employment as a Longshoreman in the State of Florida in 2009.

**Respondent,** Secretary Of The Deprtment Of Homeland Security ("DHS"), in 2009 violated federal law governing the TWIC-Card rules and regulations which in turn, contravened El-Amin's right to equal employment opportunity. For example, the DHS defaulted on its duties and obligation it owed to El-Amin after he petitioned DHS several times requesting that It come to his aid and assist him in enforcing his rights and privileges as a Longshoreman in Florida. The respondent obviously made a distinction in favor against El-Amin because he belongs to the Islamic religion and America was at war with Islam and its members worldwide at that particular time. The fact that the respondent refused to

intervene after El-Amin brought his dilemma to its attention regarding the unlawful treatment he was being subjected to by the other respondents in this case was evident. The DHS deliberately turned a blind eye, looked the other way after being made aware federal laws were being violated as it relates to the TWIC-Card rules and regulations. El-Amin was clearly discriminated against and denied equal protection of the law by the DHS which was tantamount to DHS acting in complicity with the other respondents (Florida officials) who blatantly violated federal law, and petitioner's rights under the pretext of upholding and enforcing state and federal laws.

**Respondent,** Director of the U.S. Department of Transportation under the supervision of the DHS TWIC-Card Office whose duties included among other things issuing TWIC-Cards to individuals who were sucessfully vetted and aprroved by the FBI to hold a TWIC-Card. El-Amin petitioned the Director of the TWIC-Card Office at the Department of transportation for assistance in enforcing his rights and privileges for which all the respondents in this case infringed. The Director turned a deaf ear and refused to take any action whatsoever. As a direct and proximate result, El-Amin was denied his rightts and privileges of earning his livilihood at Port Everglades in Fort Lauderdale, Florida in 2009.

**HISTORICAL BACKGROUND INFORMATION**

This instant case has all the hall marks of undeniable systemic racism and religious bigotry on the part of both State and federal officials who were involved in the unlawful incidents described in this complaint. What this instant matter brings to mind and which has various similarities to, is the blatant racial/or religious discrimination, hatred and fear displayed and unleashed against Japanese-Americans unjustifiably. For example, starting in 1942 until 1945, 110,000 Japanese-Americans from the West Coast were forcibly moved by the U.S. Government to detention camps and unlawfully stripped of their citizenship rights and privileges guaranteed by the U.S. Constitution and ultimately destroyed their economic lives as well.

4,

## Historical Background Information (cont:d)

Under Executive Order 9066, authorities were ordered to intern those citizens simply for being of Janpanese heritage. They were incarcerated against their will, having committed no crime other than having ancestors from Japan. Over one thousand Japanese-Americans were placed in camps, one of the most prominent being located on the eastern slopes of the Sierra Nevada mountains, where the War Relocation Center rises from the barren soil of california's high desert.

In summer, temperatures routinely rose past 100 degrees. In winter, brutal, freezing winds swept down from the snowy peaks above, bending trees side ways and sending clouds of sand and dust through the air. Entire families were rounded up and sent to live in those prisons for the duration of the war. They slept side by side in barracks, surrounded by barbed wire fences. Armed guards looked down from high sentry towers, scrutinizing their every movement.

Until Emperor Hirohito surrended, they had to remain there, in a place with no such thing as privacy, showers were communal, as was the latrines, which lacked the decency of a simple partition. As shameful, dehumanizing and unlawful as the aforementioned was, still, it could hardly compare to the atrocious acts perpetuated against El-Amin and similarly situated Muslim-Americans and members of the American Islamic Community who were caused to endure after the 9/11 terrorist attacks on America.

Even though El-Amin and other Muslims in America were not confined physically in internment camps, many were picked up, detained and harressed by law enforement officials and interrogated because they were muslims. The majority of Muslim-Americans and our houses of worship (Masjids) were placed under surveilance and illegally infiltrated in search of nefarious and anti-American activities. In other words, we were unconstitutionally shackled psychologically and placed in mental bondage, unlawfully discriminated against, arbitrarily and capriciously subjected to rules, policies and practices that were untenable, egregious and unconscionable.

5.

Many Muslim-Americans such as El-Amin citizenship rights and privileges were intentionally restricted arbitrary and we were prevented from exercising our right to participate and compete on an equal footing with all other citizens of America in a legtimate manner in selling our skills and labor. El-Amin and other Muslim-Americans were deliberately denied an opportunity to work at decent paying jobs such as Longshoremen position at seaports and secure our basic needs from the economy via gainful employment. El-Amin, like many other Muslim-Americans was systematically locked out of the mainstream economy as part of a deliberately orchestrated scheme, speciifically in El-Amin's case by the State of Florida and federal government officials (DHS and the Department of Transportation ("DOT")) when El-Amin was subjected to arbitrary punishment for no other reason than his religious affiliation with Islam.

Simply put, El-Amin in particular was subjected unlawfully to psychological warfare and economic deprivation by the respondents in this instant case, and was driven into bankruptcy and eventually he succumb to unbearable finanical pressures. As a result, he ended up as a statistic on the prison incarceration recidivism list. El-Amin's attempt to surivive the economic hardship he experienced after his customary steady, weekly income opportunity was denied him as a Longshoreman at Port Everglades was tantamount to having his citizenship rights and privileges stripped away without Due Process and equal protection of the law. Such an attack against innocent Muslim Americans in particularly El-Amin who has never had any alliance whatsoever with anyone involved with the 9/11 terrorist attacks on the homeland.

The psychological warfare and econimic deprivation unleashed and brought to bear on El-Amin and other Muslim-Americans was more devastating than anything the interned japanese-Americans could ever begin to imagine. The Japanese-Americans knew why they were being incarcerated, but the Muslim-Americans in the aftermath of 9/11 terrorist attacks were left to wonder and try to figure

6,

out, if and when our civil rights and privileges of citizenship was going to be interferred with openingly and in a clandstine fashion for the sole purpose of inflicting undue pain and hardship. The stress and psychological pain El-Amin felt when attempting to remain on guard against such an assault and the injuries caused him was equivalent to trying to defend oneself from an opponent in a controversy who you cannot see. The individuals acting under color of law as named as respondents in this complaint hid behind their official positions and used it as a shield and later attempted to escape with impunity after violating the law under the pretext of enforcing it.

The aforesaid behavior of the respondents eroded and undermined El-Amin's confidence in the DHS's interest in upholding and enforcing the law relative to Muslim-American citizenship rights and privileges when DHS refused to render aid to El-Amin after the unlawful treatment he was being subjected to was brought to DHS's attention via letters of complaints. Said refusal to act illustrated not only the unfair burden placed on El-Amin by DHS to resolve on his own the denial of equal employment opportunity as a TWIC-Card Holder, but the DHS's inaction were unconstitutional as they violated El-Amin's right to equal Protection of the law.

The above mentioned system of racism, religious bigotry and unlawful behavior engaged in under color of law was responsible for the sabotaging of El-Amin's Longshoreman career in the State of Florida in 2009. Officials at the DHS tucked their heads in the sand and refused to intervene and protect and enforce El-Amin's rights as a TWIC-Card Holder seeking gainful employment. Said activity by both State and Federal Government officials was unlawful, untenable, egregious and unconscionable.

7,

## STATEMENTOF THE FACTS

1.) In the aftermath of the september 11, 2001, terrorist attacks on the Homeland, the U.S. Congress authorized the establishment of the Department of Homeland Security ("DHS"). The DHS was given legal authority to take over and control security at all seaports, borders amongst other infrastructures and major events providing law enforcement and disaster relief in America.

2.) From information and belief all states in this country except Florida submitted to the change and allowd the DHS to assume control of its seaports. The State of Florida in essence rebelled and refused to surrender to the newly created national seaport security laws promulgated by the DHS and fought against the federal government on those issues in court.

3.) During Florida's rebellion against the agency DHS, the rights and privileges of El-Amin and an untold number of Florida residents were tramped and El-Amin and others' ability to earn their livilihood as longshoremen were violated, worst still, El-Amin eventually ended up in prison as a direct and proximate result of the economic hardship he was caused to endure with no fault of his own.

4.) In the interim and while the stand-off and court battle between the State of Florida and the DHS was in progress, El-Amin and many other Florida residents were caused to undully suffer economic loss and hardship when we were denied a Florida State Seaport ID Badge. Said badge would have allowed El-Amin and others to enter the ports in Florida to work as Longshoremen and official members of the International Longshoremen Association ("ILA").

5.) When the U.S. Congress created the DHS, the DHS was given legal authority to promulgate,

implement and make mandatory that all seaport workers such as Longshoremen and transportation workers (truck drivers) entering the ports for employment purposes had to have possess a Transportation Workers' Identification Credential also known as (TWIC-Card"). The TWIC-Card officially replaced State Port ID Badges and the State vetting requirements.

6.) The DHS set up substations offices near seaport where dock workers and truckers were required to visit, fill out applications for their TWIC-Cards. The processing fee of $132.50 had to be paid, the individual's photo and fingerprints would be taken and sent off the the FBI headquarters for complete criminal and terrorist background check.

7.) After the background check was completed and approved El-Amin was issued a federal government issued picture ID (TWIC-Card) which served to replace any/all state port ID badges authorizing El-Amin to enter and work at any seaport in America.

8.) The federal issued TWIC-Card legally supseded any/all pre-existing Florida State Port ID Badges and vetting requirements. However, El-Amin's rights and privileges pursuant to his TWIC-Card was undermined. He was put into a very tough economic crunch when Florida State officials (the respondents) refused to grant El-Amin access to enter its seaport to earn his livilihood despite the fact he presented proper paperwork from his ILA Local Union #1529 coupled with his TWIC-Card to no avail.

9.) The legal challenge the State of Florida launched in court against the DHS failed. By that time El-Amin had become bankrupted after living off and depleting his savings. The DHS and the U.S. Department of Transportation collectively approved and armed El-Amin with a TWIC-Card. However, they refused to intervene or respond to El-Amin's appeals for assistance with enforcing his rights and privleges guaranteed by his TWIC-Card when it was infringed by the other named respondents in this instant case.

9⋅

### STATEMENT OF THE FACTS (cont:d)

10.) The Florida State respondents named in this complaint infringed El-Amin's TWIC-Card rights and privileges by denying him equal employment opportunity when they far exceeded their legal authority and overstepped their legal boundry after the federal government take over of its seaports.

### RELIEF

El-Amin respectfully seeks full and effective reparation/compensation for the harm he was undully caused to suffer and the injuries he sustained to his rights. Such harm and injuries entailed, but was not limited to economic hardship, loss of wages, emotional pain and distress, equal protection and due process of law. El-Amin request any further relief deem fair, just and needed from each of the respondents and all of them.

### CONCLUSION

El-Amin submits that all of the named respondents in this instant complaint acting under color of State and federal law conspired to, and did violate his rights and privileges pursuant to the TWIC-Card rules and regulations. That El-Amin's right to equal employment opportunity was deliberately infringed. That the DHS refused to protect El-Amin's TWIC-Card rights because he is a Muslim, and America was at war with Islamic radicals from abroad who attcked the Homeland and wrongfully took out its frustrations and anger on American-Muslims as well. Said unlawful behavior toward El-Amin in particular and Muslim-Americans in general in the aftermath of 9/11 inflicted upon El-Amin and other Muslims what was equivalent to state and federal law enforcement officials and others arbitrarily and capriciously blaming and punishing them unjustifiably. What was done to El-Amin and other Muslim-Americans was tantamount to retaliating against all White-Christians Americans for the shameful actions of the radical, pseudo christian group (Ku Klux Klan), who claimed to exemplify the life and teachings of Jesus Christ when they terrorized African-Americans. Therefore, the respondent named in this instant case should not be allowed to escape with impunity.

I affirm and declare that all statements made in this complaint to the Equal Employment Opportunity

Commission ("EEOC") are true and correct to the best of my knowledge, understanding and belief.

Respectfully submitted,

*Melvin Abdullah El-Amin*

Melvin Abdullah El-Amin
#MU 1245
Smart Communications/PADOC
SCI-Rockview
P.O. Box 33028
St. Petersburg, FL 33733
Date: 6/23/21

11.

Melvin Abdullah El-Amin #QL 4184
SCI-Rockview
1 Rockview Place-P.O. Box A
Bellefonte, PA 16823

Attn: Chief Administrative Judge
United States district Court
301 North Miami Avenue
Miami, Florida 33128

February 22, 2022

Dear Your Honor:

I am addressing this letter to you as an official complaint and request to convert the enclosed complaint into a Civil Action. After following proper protocol in my attempt in seeking justice via federal administrative agencies namely: 1.) U.S. Department of homeland Security ("DHS"). 2.) U.S. Department of Transportation ("DOT.") and finally 3.) The equal Employment Opportunity Commission ("EEOC") in Miami without sucess, I decided to petition this Honor court for leave to proceed in forma paupers until I am can obtain the service of an attorney to represent me in this matter See Exhibit # 10.

Your Honor, I am hopeful and optimistic that you will use the power/authority of your office to intervene in this matter and ensure that I receive Due process and equal Protection of the law in this matter. Therefore, I request that you enter an Order allowing me to proceed in this request since the original complaint I filed with the EEOC has gone unanswered leaving me no other recourse but to appeal to you for relief.

Thanking you in advance for your anticipated consideration and may I please have a prompt reply.

Very truly yours,
Melvin Abdullah El-Amin
Melvin Abdullah El-Amin
ENCLOSURES
CC. file.

1

INMAT
PA DEF
CORRE

Mehran Abdullah El-Amin # QL-4184
SCI - Rockview
1 Rockview Place - P.O. Box A
Bellefonte, PA 16823



U.S.M.S.
INSPECTED
BY:

Attn: Chief Administrative Judge
United States District Court
301 North Miami Avenue
Miami, FL 33128